**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JAMES R. SADA,

                **Plaintiff,**

-vs-                                                  Case No. 6:09-cv-506-Orl-31KRS

CITY OF ALTAMONTE SPRINGS,
ROBERT PELTON, BRIAN LYPSEY,
ROBERT SHAPIRO, KRISTOFFOR
TOMICH, and TROY ANTOLIN,

                **Defendants.**
_____

## ORDER

This matter comes before the Court on the motions to dismiss filed by Defendant Troy Antolin ("Antolin") (Doc. 31), Defendant Brian Lypsey ("Lypsey), Defendant Robert Pelton ("Pelton"), Defendant Robert Shapiro ("Shapiro"), and Defendant Kristoffor Tomich ("Tomich") (collectively, the "Individual Defendants"). The motions were filed on August 26, 2009. The deadline for a response from the Plaintiff, James Sada ("Sada") passed on September 14, 2009, but as of this date, no such response had been filed. Pursuant to Local Rule 3.01(b), the motions are considered unopposed. With limited exceptions, the Individual Defendants make the same arguments in their motions, and therefore the Court will consider them together.

**I.    Background**

The instant suit arises from an incident that occurred on March 21, 2007. According to the allegations of the Complaint (Doc. 1), which are accepted as true for purposes of resolving the instant motion, Sada was shopping at a Sears store in Altamonte Springs that day. (Doc. 1 at 4).

When Sada's son refused to stop using Sada's cell phone, he took it away and threw it on the floor. (Doc. 1 at 4-5). A Sears employee then twice "approached" Sada, and Sada twice told the employee not to do so. (Doc. 1 at 5). He then left the store. (Doc. 1 at 5). Representatives of the Sears store "became concerned and called the police." (Doc. 1 at 5).

After leaving the store, Sada spent 45 minutes in the parking lot, standing by his car and waiting for his family to finish shopping. (Doc. 1 at 6). Defendants Pelton and Shapiro, both law enforcement officers employed by Defendant City of Altamonte Springs (the "City"), blocked Sada's vehicle with their own and asked Sada if something was bothering him. (Doc. 1 at 6). Sada indicated that he was angry with his son for showing him a lack of respect, but when Pelton asked him to explain, he declined. (Doc. 1 at 6-7). Three additional officers arrived on the scene, including Defendant Lypsey, who took charge and immediately became belligerent toward Sada. (Doc. 1 at 7).

Sada told Lypsey and the other officers that he was a former police officer and an acquaintance of the Altamonte Springs chief of police, and that they could call the chief "to vouch for Sada's character and being a lack of threat to any officer." (Doc. 1 at 8). Lypsey told Sada to shut up, then instructed the other officers to arrest him because of his name-dropping. (Doc. 1 at 8-9). Sada was arrested for disorderly conduct on the premises of an establishment pursuant to Florida Statute § 509.143 and for battery of a minor child pursuant to Florida Statute § 784.03. (Doc. 1 at 9).

Several of the officers coached witnesses to make untruthful statements (Doc. 1 at 10) and provided false affidavits (Doc. 1 at 12) concerning the events leading up to Sada's arrest. Based on the coached statements and the false affidavits, the trial court at Sada's initial appearance found

that probable cause had existed for his arrest. (Doc. 1 at 12). The State Attorney filed an information against Sada for disorderly conduct pursuant to § 877.03, Fla. Stat. (Doc.1 at 12). When Sada retained counsel and filed a motion to dismiss the information, the State Attorney did not oppose it. (Doc. 1 at 13). The trial court then dismissed the information. (Doc. 1 at 13).

Sada filed the instant suit on March 20, 2009.[1] He raises the following claims against the Individual Defendants: a Section 1983 claim (and request for punitive damages) for violation of his First and Fourth Amendment rights (Count II); false arrest/imprisonment (Count IV); battery (as to Antolin, Tomich and Shapiro, only) (Count V); intentional infliction of emotional distress (Counts VI and VII); and slander (Count VIII).

## II. Legal Standards

### A. Rule 12(b)(6)

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), this Court must view the complaint in the light most favorable to the Plaintiff,. *Scheuer v. Rhodes*, 416 U.S. 232 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*,

---

[1] This is not Sada's first suit regarding this incident. On July 25, 2008, he filed a similar suit against the same parties in state court. That case was removed to the United States District Court for the Middle District of Florida, and in November 2008 Judge Patricia Fawsett granted motions to dismiss filed by the Defendants, giving Sada ten days to amend his complaint. Sada did not do so, and that case was dismissed.

550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

    B.    Section 1983 and Qualified Immunity

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law [or] suit in equity.

42 U.S.C. § 1983. Section 1983 is derived from § 1 of the Civil Rights Act of 1871, 17 Stat. 13. It was intended to create "a species of tort liability" in favor of persons deprived of federally secured rights. *Smith v. Wade*, 461 U.S. 30, 34 (1983) (citations omitted). The Eleventh Circuit imposes heightened pleading requirements for Section 1983 cases that involve individuals entitled to assert qualified immunity. *Swann v. Southern Health Partners, Inc.*, 388 F.3d 834 (11th Cir. 2004) (citing *Leatherman v. Tarrant County*, 507 U.S. 163 (1993)).

The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly

incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.2002) (internal citation and quotation omitted). Because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985), questions of qualified immunity must be resolved "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (per curiam). It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint "fails to allege the violation of a clearly established constitutional right." *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001) (quoting *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir.1997)).

## III.    Analysis

### A.    Qualified Immunity

There is no dispute that the Individual Defendants were performing discretionary functions when they interacted with Sada. Thus, they are entitled to qualified immunity unless their conduct violated clearly established rights of which a reasonable person would have known. It is well established that arrests made without probable cause violate the Fourth Amendment. *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) (citing *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)). An officer is entitled to qualified immunity, however, where the police officer had "arguable probable cause," that is, where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiff. *Redd*, 140 F.3d at 1382.

The Individual Defendants contend that the allegations of the Complaint establish that they had arguable probable cause to arrest Sada, because he took a cell phone from his son and threw it,

because he twice warned a Sears employee to back off, and because Sears employees became concerned enough to call for police assistance. Although the Complaint does contain these allegations, they are not enough to establish arguable probable cause for the arrest that took place here. The last two items do not, themselves, tend to show that Sada was engaged in disorderly conduct, and the Individual Defendants make no effort to show that someone whose only activity was throwing a phone could be found to have violated the statute.

### B. Rule 12(b)(6)

The Individual Defendants next contend that Sada has failed to state a claim under Section 1983, particularly in light of the heightened pleading standard applicable to the claims made against these individuals. The Court agrees in part. Sada's pleading, which repeatedly states that he was arrested without probable cause, states a 1983 claim for a violation of his Fourth Amendment right to be free of unreasonable seizures. However, Sada has failed to provide anything more than cursory support for his claim that his First Amendment rights were violated. The Court cannot discern any expressive conduct that even arguably should be subject to First Amendment protection.

### C. Statutory Immunity

Sada has asserted false arrest/imprisonment claims against each of the Individual Defendants, who argue that they are entitled to immunity pursuant to Fla. Stat. 768.28(9)(a), which provides that:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer,

employee, or agent acted in bad faith or with malicious purpose or in a
manner exhibiting wanton and willful disregard of human rights, safety, or
property.

The Individual Defendants contend that Sada has not plead that they acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. However, Sada contends that all five Individual Defendants filed false affidavits to fabricate probable cause in support of the arrest, indicating that they were acting in bad faith.[2]

Sada has also filed a battery claim as to Defendants Antolin, Tomich, and Shapiro, who touched him during the course of his arrest. As to these defendants and this claim, Sada has not plead that they acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

The Individual Defendants also contend that they are entitled to immunity on the false arrest/imprisonment claim due to Fla. Stat. § 509.143. That statute, which is concerned with disorderly conduct on the premises of a commercial establishment, provides in pertinent part that

(2) A law enforcement officer may arrest, either on or off the premises of the
licensed establishment and without a warrant, any person the officer has probable
cause to believe violated § 877.03 on the premises of a licensed establishment and, in
the course of such violation, created a threat to the life or safety of the person of
others.

(3) An operator or a law enforcement officer who detains a person under subsection
(1) or makes an arrest under subsection (2) is not civilly or criminally liable for false

---

[2]This allegation is also enough, at least at this stage, to support a claim for punitive damages under Section 1983, which requires that a defendant's conduct be driven by "evil motive or intent" or involve "a reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30,

arrest, false imprisonment, or unlawful detention on the basis of any action taken in compliance with subsection (1) or subsection (2).

At this stage of the proceedings, the prerequisites for application of this statute have not been met. The immunity found in subsection (3) only applies where the detention occurs in compliance with subsection (2). Subsection (2) requires that the officer have probable cause to believe that the person arrested violated Section 877.03. In Sada's version of the events that day, he was not being disorderly or threatening the life and safety of others, and he does not admit doing anything that would have given a police officer probable cause to believe he was doing so. Rather, the Complaint states explicitly and implicitly that the police did not have probable cause to arrest him that day. Accepting Sada's recounting as true for purposes of resolving this motion, Section 509.143 does not apply.

## IV.     Conclusion

In consideration of the foregoing, it is hereby **ORDERED** that the motions to dismiss filed by Defendant Troy Antolin ("Antolin") (Doc. 31), Defendant Brian Lypsey ("Lypsey), Defendant Robert Pelton ("Pelton"), Defendant Robert Shapiro ("Shapiro"), and Defendant Kristoffor Tomich ("Tomich") are **GRANTED IN PART AND DENIED IN PART**, as follows. The Section 1983 claims asserting First Amendment violations, only, are **DISMISSED WITHOUT PREJUDICE.** The battery claims are also **DISMISSED WITHOUT PREJUDICE**. In all other respects, the motions are **DENIED**. On or before October 26, 2009, Sada may file an amended complaint that cures the deficiencies identified as to the First Amendment violations under Section 1983 and the battery claims. Should he fail to do so by that

date, the dismissal of these claims without prejudice will be converted to a dismissal with prejudice.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 7, 2009.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

Unrepresented Party