## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**JAMES R. SADA,**

               **Plaintiff,**

**-vs-**                                        **Case No.  6:09-cv-506-Orl-31KRS**

**CITY OF ALTAMONTE SPRINGS,**
**ROBERT PELTON, BRIAN LYPSEY,**
**ROBERT SHAPIRO, KRISTOFFOR**
**TOMICH, and TROY ANTOLIN,**

               **Defendants.**

_____

## ORDER

This matter comes before the Court on the motions for summary judgment (Doc. 127-131, 135) filed by Troy Antolin ("Antolin"), Brian Lypsey ("Lypsey"), Robert Pelton ("Pelton"), Robert Shapiro ("Shapiro"), Kristoffor Tomich ("Tomich"), and the City of Altamonte Springs (the "City"), respectively, the responses (Doc. 178, 179 ) filed by the Plaintiff, James Sada ("Sada"), and the replies (Doc. 181-186) filed by the Defendants.  For the reasons outlined below, the Court finds that the Defendants' motions are due to be granted.

**I.**    **Background**

The following facts are undisputed.  This suit grew out of Sada's arrest, on March 21, 2007, in a parking lot outside the Sears store in the Altamonte Mall.  Sada and his son had gotten into a confrontation inside the store, with Sada trying to convince his son to hang up his cell phone.  Eventually, Sada says, he tried to grab the cell phone away from his son and, in doing so,

his hand hit his son's shoulder blade.  Sada says he grew frustrated and threw down his cell phone.

Shortly afterward, Sada exited the store and waited in the parking lot.

The individual defendants are all members of the Altamonte Springs Police Department

who responded to a call about a disturbance at the Sears store.  Antolin interviewed several people

who told him, in essence, that Sada had lost his temper inside the store and had hit a young man.

Some of these people told Antolin they had witnessed Sada's conduct, while others said they had

been told of it by people who had witnessed it.  At some point, Sada told the officers of another

Altamonte Springs officer he knew, who could provide a character reference.

Antolin made the decision to arrest Sada for battery in violation of Fla. Stat. § 784.03 and

disorderly conduct on the premises of a licensed establishment in violation of Fla. Stat. § 509.143.

Sada contends that he was arrested because the officers thought he  was "dropping names" and

because the officers wanted to teach him a lesson, not because the officers actually believed he had

committed any crime.

The state's attorney filed an information charging Sada with disorderly conduct in violation

of Fla. Stat. § 877.03.  No information was filed in regard to any battery charge.  Subsequently,

Sada moved to dismiss the disorderly conduct charge, and it was dismissed with prejudice.

Sada filed the instant suit on March 20, 2009.  In his Second Amended Complaint (Doc.

46), he asserts the following claims: violations of his First and Fourth Amendment rights pursuant

to 42 U.S.C. § 1983 against the City (Count I) and the individual officers (Count II); false

imprisonment/arrest against the City (Count III) and the individual officers (Count IV); battery

against Defendants Antolin, Tomich, and Shapiro (Count V), two counts of intentional infliction

of emotional distress against the individual officers (Count VI and Count VII); slander against

Defendants Antolin and Shapiro (Count VIII); and negligent training and supervision (Count IX) and negligent retention (Count X) against the City.

## II.      Legal Standards

### A.      Summary Judgment

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the

non-movant's factual characterizations and legal arguments.  *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

### B.    Qualified Immunity

Qualified immunity protects government officials performing discretionary functions from individual liability as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).  Qualified immunity is an immunity from suit rather than a mere defense to liability, and it is effectively lost if a case is erroneously permitted to go to trial.  *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).  Qualified immunity decisions should be resolved at earliest possible stage in the litigation.  *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (*per curiam*).  Unless the plaintiff's allegations state a claim of violation of a clearly established constitutional right, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.  *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001).  Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in question in fact committed those acts.  *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815.

To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority.  *Gonzalez v. Reno*, 325 F.2d 1228, 1234 (11th Cir. 2003).  Once the defendants establish this, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate.  *Id.*  The Supreme Court has established a two-part test to determine whether

qualified immunity should apply.  "The threshold inquiry a court must undertake in a qualified

immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation."

*Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 2514, 153 L.Ed.2d 666 (2002).  To resolve that

inquiry, the Court must determine whether the facts alleged, taken in the light most favorable to

the party asserting the injury, show the officer's conduct violated a constitutional right.  *Gonzalez*,

325 F.3d at 1234.  If so, the Court must then determine whether the right was "clearly established."

*Id.*

### III.    Analysis

Sada contends that the individual officers deprived him of his rights under the First and

Fourth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.  Sada

contends that his Fourth Amendment rights were violated because he was arrested without

probable cause, and he contends that his First Amendment rights were violated because the real

reason he was arrested was because of protected speech – *i.e.* his statement that another Altamonte

Springs officer could provide a character reference for him.  There is no dispute as to whether the

officers were acting within their discretionary authority when the decision was made to arrest

Sada.  The question, then, is whether Sada's allegations, viewed in the light most favorable to him,

show that the officers deprived him of his rights under the First or Fourth Amendments.

A warrantless arrest without probable cause violates the Fourth Amendment and provides

the basis for a Section 1983 claim.  *See, e.g.*, *Marx v. Gumbinner*, 905 F. 2d 1503, 1505 (11th Cir.

1990).  The existence of probable cause, however, is an absolute bar to such a claim.  *Id.* at 1505-

06.  To be entitled to qualified immunity, an officer need not have actual probable cause but only

arguable probable cause – *i.e.*, he need only show that the facts and circumstances were such that

the officer reasonably could have believed that probable cause existed. *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997). "Probable cause [to arrest] exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 1310-11, 93 L.Ed. 1879 (1949). When the facts are not in dispute, whether probable cause existed is a question of law, and summary judgment is appropriate. *Gumbinner* at 1506. The existence of probable cause for an arrest would also defeat Sada's First Amendment claim. *Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002) (citing cases).

Under Florida law, the crime of battery occurs when someone (1) actually and intentionally touches or strikes another person against the will of the other; or (2) intentionally causes bodily harm to another person. Fla. Stat. § 784.03. At the time of Sada's arrest, the officers were aware of several pieces of information that suggested that he had committed battery. Sears customer Cynthia Miller ("Miller") had given the officers a sworn statement that she had seen Sada shouting angrily at a young man, who was talking on a cell phone. (Doc. 132-3 at 1). In her statement, Miller wrote that she did not hear the young man's reply, but whatever it was made Sada "very angry" and led him to respond, "You want to bet?" (Doc. 132-3 at 1). Sada then "went after" the young man and "socked" him in his upper left should blade. (Doc. 132-3 at 1). Miller stated she then yelled for help, fearing the young man would be hurt, and Sada told her to "stay out of this." (Doc. 132-3 at 1). She also told police that, subsequently, she was afraid to leave the store, because Sada was outside in the parking lot, yelling and cursing. (Doc. 132-3 at 1).

Victor Melendez ("Melendez"), a Sears employee, made a sworn statement that he saw Sada throw his cell phone toward a young man.  (Doc. 132-2 at 1).  When Melendez approached Sada, Sada told him in a threatening voice, "Son, if I was [sic] you I will [sic] get away from me."  (Doc. 132-2 at 1).  When Melendez continued to ask Sada what was going on, Sada told him "Son, you are standing to [sic] close.  You better get back."  (Doc. 132-2 at 1).  Melendez also swore that Sada's actions made him think that Sada was going to hit him, so he backed up.  (Doc. 132-2 at 1).

Rashad Reed ("Reed"), a Sears loss prevention officer, swore to police that he had responded to an incident where a father had hit his son in the face and then thrown his cell phone across the store.  (Doc. 132-4 at 1).  Reed, who said he witnessed Sada pacing back and forth in the parking lot, yelling and cursing, also told the officers he was approached by "a couple" of Sears customers who told him that they were afraid to walk past Sada to get to their vehicles. (Doc. 132-4 at 1).

Miller's statement on its own would be enough to provide arguable probable cause that Sada had "actually and intentionally touche[d] or str[uck]" the young man, subsequently identified as Sada's son, against his will.  The statements made to the officers by Melendez (that Sada had thrown his phone at his son and threatened Melendez) and by Reed (that Reed had been told that Sada had hit his son in the face) provide additional support for this conclusion.  The officers also spoke with other third parties who generally supported Miller's version of events, and it is undisputed that the officers did not uncover anything suggesting that Miller, Melendez, or Reed were unreliable witnesses or had any motivation to lie about Sada.  In addition, Sada admits that his hand "contacted" his son's left shoulder blade during their disagreement, and he admits that he "threw down" his cell phone during the dispute (though he denies it hit anyone).  (Doc. 178 at 2).

Based on this information, a reasonable officer could have concluded that Sada had committed battery in violation of Fla. Stat. §784.03.  Thus, probable cause existed to arrest Sada for battery.

Sada contends that, despite this, his arrest was unlawful because Florida law recognizes a parental privilege that permits a simple battery in the administration of discipline by one in authority over a child.  *See Raford v. State*, 828 So. 2d 1012, 1015 (Fla. 2002).  In essence, Sada is arguing that officers must be aware of potential affirmative defenses before determining whether they have probable cause to make an arrest.[1]  Sada cites no precedent for this proposition.  On the other hand, the United States Court of Appeals for the Eleventh Circuit has held that police officers have no responsibility to determine the viability of a statute of limitations defense when executing a valid arrest warrant.  *Pickens v. Hollowell*, 59 F.3d 1203, 1207 (11th Cir. 1995).  Although the instant arrest was based on probable cause rather than a warrant, and the defense at issue was the parental privilege rather than the statute of limitations, the same rationale would apply in this case.  Under *Pickens*, the police officers were not required to assess the applicability of the parental privilege to determine whether they had probable cause to make an arrest.  *See also Jordan v. Moseley*, 487 F.3d 1350, 1355 (11th Cir. 2007) (stating that police officers "are not expected to be lawyers or prosecutors").[2]

_____

[1]Sada also argues that the officers failed to conduct a reasonable investigation, but this argument does not merit extended discussion.  The shortcomings Sada points to, such as a failure to review store videotapes, and a failure to credit statements by his son, are not enough to render the investigation unreasonable.  Sada does not (and did not) suggest that the videotapes (assuming they exist) would show anything that would change the result, and the officers were not required to believe the son rather than the other witnesses who provided statements.

[2]Even assuming *arguendo* that the officers were constitutionally obligated to consider potential affirmative defenses before arresting him, Sada has not shown that this right was firmly established at the time of his arrest.  Accordingly, the officers would be entitled to qualified immunity on that basis as well.  And it is not clear that the privilege would apply in this case.  Under Florida law, parental conduct that is motivated "by malice, and not by an educational purpose" falls outside the

The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest. When an arrest is properly supported by probable cause as to *any* offense, neither the officer's subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest. *Lee v. Ferraro*, 284 F.3d 1188, 1195-96 (11th Cir. 2002). Thus, because the officers had probable cause to arrest Sada for battery, the question of whether they had probable cause to arrest him for disorderly conduct becomes moot. The existence of probable cause to arrest Sada also defeats any First Amendment claim he might have had. *Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002). Accordingly, as to Count II, the individual defendants are entitled to qualified immunity. In addition, because Sada cannot show that he suffered a constitutional deprivation, his Section 1983 custom or policy claim against the City in Count I must also fail. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Under Florida law, probable cause is also an absolute defense to a claim for false arrest or false imprisonment. *Bolanos v. Metropolitan Dade County*, 677 So. 2d 1005, 1005 (Fla. 3d DCA 1996) (*per curiam*). Accordingly, the Defendants are entitled to summary judgment on Count III and Count IV. And the existence of probable cause also defeats Sada's state law battery claim against Defendants Antolin, Tomich, and Shapiro. *See* Fla. Stat. § 768.28(9)(a) (providing immunity for officers in tort unless they "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."). Even without the Court's finding

_____

bounds of permissible disciplinary conduct. *Kama v. State*, 507 So. 2d 154, 156 (Fla. 1st DCA 1987). The officers had been told that Sada had hit his son in the face, had thrown his phone at him, had threatened other adults and had been so angry that it caused customers to fear for their own safety. It would not be unreasonable for the police to conclude that Sada had become enraged and the resulting battery was motivated by malice rather than an educational purpose.

that probable cause existed for his arrest, Sada's claims for intentional infliction of emotional distress also fail, as the conduct he describes in his complaint, though wrongful, is not "so outrageous in character, so extreme in degree, [as] to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civil community." *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985).   And Sada has provided no evidence that the City's training policies, its supervision of the individual Defendants, or its retention of Lypsey caused him to suffer a false arrest or ill effect.   Accordingly, the City is entitled to summary judgment as to Count IX and Count X.[3]

In consideration of the foregoing, it is hereby

**ORDERED** that the motions for summary judgment (Doc. 127-131, 135) filed by Troy Antolin, Brian Lypsey, Robert Pelton, Robert Shapiro, Kristoffor Tomich,and the City of Altamonte Springs are hereby **GRANTED**.   The Clerk is directed to enter judgment in favor of Defendants Lypsey, Pelton, Tomich and the City and to dismiss them from this case.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 16, 2010.

_____
GREGORY A. PRESNELL
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party

_____

[3]Neither Antolin nor Shapiro sought summary judgment as to the slander count (Count VIII). Upon review, it appears that this claim lacks sufficient support to warrant going to trial.  The Court will enter an Order to Show Cause why judgment should not be entered against the Plaintiff on Count VIII.