# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JAMES R. SADA,**

     **Plaintiff,**

**-vs-**            **Case No.  6:09-cv-506-Orl-31KRS**

**CITY OF ALTAMONTE SPRINGS,**
**ROBERT PELTON, BRIAN LYPSEY,**
**ROBERT SHAPIRO, KRISTOFFOR**
**TOMICH, and TROY ANTOLIN,**

     **Defendants.**

_____

## ORDER

   This matter comes before the Court on the Motion for Sanctions (Doc. 198) filed by the

City of Altamonte Springs (the "City"), the Motion to Tax Fees and Costs (Doc. 209) filed by the

City, the renewed Motions for Fees and Costs (Doc. 232-236) filed by Defendants Troy Antolin

("Antolin"), Brian Lypsey ("Lypsey"), Robert Pelton ("Pelton"), Robert Shapiro ("Shapiro"), and

Kristoffor Tomich ("Tomich") (collectively, the "Individual Defendants"), respectively, the

Supplemental Motion for Sanctions (Doc. 237) filed by the City, the responses in opposition (Doc.

210, 228, 240, 241, and 244) filed by the Plaintiff, James Sada ("Sada"), and various replies and

supplemental briefs (Doc. 212, 242, 243, and 259) filed by the Defendants.  The City seeks

sanctions against Sada and his counsel for alleged violations of Fed.R.Civ.P. 11, 28 U.S.C. § 1927

(Doc. 198) and seeks to tax fees and costs against Sada under 42 U.S.C. § 1988 and Fla. Stat.

§ 768.79 (Doc. 209).  The Individual Defendants seek an award of attorney's fees as sanctions

under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927.

I.      **Background**[1]

This suit grew out of Sada's arrest, on March 21, 2007, in a parking lot outside the Sears store in the Altamonte Mall.  Sada and his son had gotten into a confrontation inside the store, with Sada trying to convince his son to hang up his cell phone.  Eventually, Sada says, he tried to grab the cell phone away from his son and, in doing so, his hand hit his son's shoulder blade.  Sada says he grew frustrated and threw down his cell phone.  Shortly afterward, Sada exited the store and waited in the parking lot for his son, who had driven away.

The Individual Defendants are all members of the Altamonte Springs Police Department who responded to a call about a disturbance at the Sears store.  Antolin interviewed several people who told him, in essence, that Sada had been arguing with a young man in the store, had lost his temper and hit him, the young man had fled the store, and Sada had followed him out to the parking lot, still angry.  Some of these people told Antolin they had witnessed Sada's conduct, while others said they had been told of it by people who had witnessed it.  At some point, Sada told the officers of another Altamonte Springs officer he knew, who could provide a character reference.

Antolin made the decision to arrest Sada for battery in violation of Fla. Stat. § 784.03 and disorderly conduct on the premises of a licensed establishment in violation of Fla. Stat. § 509.143.  Sada contends that he was arrested, not because the officers thought he had committed a crime, but

---

[1]Some of the following is taken from this Court's order (Doc. 192) granting the Defendants' motions for summary judgment.

because the officers thought that his offer to provide a character reference was "dropping names" and they wanted to teach him a lesson.

The state's attorney filed an information charging Sada with disorderly conduct in violation of Fla. Stat. § 877.03.  No information was filed in regard to a battery charge.  Subsequently, Sada moved to dismiss the disorderly conduct charge, and it was dismissed with prejudice.

Sada filed the instant suit on March 20, 2009.  In his Second Amended Complaint (Doc. 46), he asserted the following claims: violations of his First and Fourth Amendment rights pursuant to 42 U.S.C. § 1983 against the City (Count I) and the individual officers (Count II); false imprisonment/arrest against the City (Count III) and the individual officers (Count IV); battery against Defendants Antolin, Tomich, and Shapiro (Count V), two counts of intentional infliction of emotional distress against the individual officers (Count VI and Count VII); slander against Defendants Antolin and Shapiro (Count VIII); and negligent training and supervision (Count IX) and negligent retention (Count X) against the City.  Among other allegations, Sada contended that he was arrested without probable cause, in violation of the Fourth Amendment to the United States Constitution.  He also asserted that his actions were protected by Florida's parental discipline privilege.

Five witnesses had given statements to the police prior to Sada's arrest.  In the Second Amended Complaint, Sada alleged that the officers had coached the witnesses and directed them to lie in their statements.  (Doc. 46 at 10).  Sada's counsel deposed one of the five, Dolores Titen ("Titen"), on June 14, 2010.  Titen testified that she had not been coached or coerced by the police or anyone else in giving her statement.  (Doc. 125-10 at 43-44).  After this testimony, Sada canceled the deposition of the other witnesses and never attempted to reset them.  (Doc. 198 at 9

n.4).  Three days after Titen's deposition, counsel for the Defendants sent a letter (Doc. 198-1 at 15-17) to Sada's counsel, providing them with relevant case law, and notifying them that in light of Titen's testimony, Sada's claims were frivolous and a failure to dismiss them could result in sanctions.

On July 7th, 2010, the City served Sada with a proposal for settlement (Doc. 206) pursuant to Florida Statute § 768.79.  The City offered $2,501 in exchange for Sada dismissing his state tort claims against the City with prejudice and executing a release.  (Doc. 206 at 2-3). The offer was not accepted.

Subsequently, the Defendants filed motions for summary judgment, arguing primarily that the Individual Defendants had sufficient probable cause to arrest Sada and that Sada had not produced any evidence to support his contention that the witness statements against him were the product of coaching by the police.  Sada again argued that the police lacked probable cause, and also contended that his actions were protected by Florida's parental discipline privilege.

The Court concluded that the multiple witness statements provided probable cause to make an arrest and that the police were not required to assess any potential affirmative defense (such as the parental discipline privilege) before doing so.  As a result, qualified immunity barred the Section 1983 claim against the Individual Defendants (Count II) and, by extension, the failure-to-train Section 1983 claim against the City (Count I).  The existence of probable cause also barred the state law false arrest/false imprisonment claims (Count III and IV).  In addition, the Court concluded that the alleged conduct was not sufficiently outrageous to support a claim for intentional infliction of emotional distress (Count VI and VII), and that Sada had presented no evidence of negligent training and supervision (Count IX) or negligent retention (Count X).  This

left only the slander claim against Defendants Antolin and Shapiro (Count VIII), as to which no summary judgment had been sought.  The Court declined to exercise jurisdiction over it, and it was dismissed without prejudice.[2]

Sada appealed the order granting summary judgment against him.  On appeal, he again argued that the police lacked probable cause and that the parental discipline privilege protected his actions toward his son.  The Defendants sought sanctions under Fed.R.App.P. 38 for a frivolous appeal.  The United States Court of Appeals for the Eleventh Circuit agreed that the witness statements provided the police with probable cause to arrest Sada for battery and that the police were not required to consider affirmative defenses in their probable cause calculation.  (Doc. 254 at 12).  The Court of Appeals also denied, in a footnote, the Defendant's Rule 38 motion.  (Doc. 254 at 15 n.3).

## II.    Legal Standards

### A.    Rule 11

Rule 11(b) states as follows:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

---

[2]The Defendants assert that the slander claim was refiled in state court, but no party has taken any action in regard to the claim since it was refiled.  (Doc. 259 at 2 n.1).

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed.R.Civ.P. 11(b).  The purpose of Rule 11 sanctions is to reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers.  *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir.2001).  "Sanctions may be imposed on the attorney, law firm, or party if Rule 11 is violated, the offending party is provided with an opportunity to withdraw the objectionable pleading and fails to do so, and a motion for sanctions is filed with the court."  *Lee v. Mid-State Land & Timber Co., Inc.*, 285 F. App'x. 601, 608 (11th Cir.2008) (citing Fed.R.Civ.P. 11(c)).  "A court confronted with a motion for Rule 11 sanctions must first determine whether the claims raised are objectively frivolous and, if they are, whether the signer of the pleadings should have been aware of their frivolous nature."  Id.  (citing *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir.1996)).

### B.      Section 1927

Title 28, § 1927 states:

§ 1927. Counsel's liability for excessive costs

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  The plain language of the statute imposes three essential requirements for an award of sanctions under § 1927:

> First, the attorney must engage in "unreasonable and vexatious" conduct.  Second, that "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings."  Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

*Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir.1997).

An attorney multiplies proceedings "unreasonably and vexatiously" within the meaning of the statute only when the attorney's conduct is so egregious that it is "tantamount to bad faith." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir.1991); see also *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir.2003) ("'Bad faith' is the touchstone.").  For purposes of § 1927, bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct.  A district court may impose sanctions for egregious conduct by an attorney even if the attorney acted without the specific purpose or intent to multiply the proceedings.  That is not to say the attorney's purpose or intent is irrelevant.  Although the attorney's objective conduct is the focus of the analysis, the attorney's subjective state of mind is frequently an important piece of the calculus, because a given act is more likely to fall outside the bounds of acceptable conduct and therefore be unreasonable and vexatious if it is done with a malicious purpose or intent.

## C.    42 U.S.C. § 1988

Section 1988 permits a court, in its discretion, to allow the prevailing party in an action under certain federal civil rights statutes to recover a reasonable attorney's fee as part of its costs.  A court may award attorney's fees under 42 U.S.C. § 1988(b) to a prevailing defendant in a Section 1983 case where the court finds that "the plaintiff's action was frivolous, unreasonable, or

without foundation, even though not brought in subjective bad faith." *Hughes v. Rowe*, 449 U.S.

5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (quoting *Christiansburg Garment Co. v. EEOC*,

434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978)).  Within this Circuit, a court is to

consider the following factors in determining whether a claim is frivolous for purposes of 42

U.S.C. § 1988: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant

offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a

full-blown trial on the merits." *Sullivan v. Sch. Bd. of Pinellas County*, 773 F.2d 1182, 1189 (11th

Cir.1985).  Section 1988 only provides for an award of fees against parties to the litigation, not

their attorneys.  *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 761, 100 S.Ct. 2455, 2461, 65 L.Ed.2d

488 (1980).

> ### D.       Section 768.79, Florida Statutes

Florida's offer of judgment statute provides, in pertinent part, that "in any civil action for

damages filed in the courts of this state, if a defendant files an offer of judgment which is not

accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs

and attorney's fees . . . if the judgment is one of no liability." Fla. Stat. § 768.79(1).  The statute

applies to actions filed in federal court in Florida.  *Menchise v. Akerman Senterfitt*, 532 F.3d 1146

(11th Cir. 2008).

Offers of judgment are also governed by Rule 1.442 of the Florida Rules of Civil

Procedure.  That rule requires, *inter alia*, that settlement proposals "identify the claim or claims

the proposal is attempting to resolve" and "state with particularity any relevant conditions."

Fla.R.Civ.P. 1.442(c)(2)(B) and (C).  A "proposal fails to satisfy the 'particularity' requirement if

an ambiguity within the proposal could reasonably affect the offeree's decision." *Saenz v.*

*Campos*, 967 So.2d 1114, 1116 (Fla. 4th DCA 2007).  For the purpose of construing the particularity requirement of rule 1.442, an "ambiguity" is defined as "the condition of admitting more than one meaning."  *Id.* at 1117 (quoting The Random House College Dictionary 42 (rev. ed. 1980)).

### III.     Analysis

#### A.     Theories Asserted

Sada's Second Amended Complaint included ten counts, with claims ranging from violations of Section 1983 to battery to intentional infliction of emotional distress.  At its heart, however, this was a wrongful arrest case, though it was pled under half a dozen different legal theories.  To prevail on any of the claims he asserted in the Second Amended Complaint, Sada had to show that he had been improperly detained.[3]  See *Sada v. City of Altamonte Springs*, 434 Fed. App'x. 835 (11th Cir. 2011) (unpublished decision) (stating that a showing of probable cause to arrest for battery was fatal to Sada's federal constitutional claims, his state law false arrest/false imprisonment claims and, by extension, his negligence and insufficient training claims against the City).

Thus the lawfulness of Sada's arrest was the threshold issue in this case.  And the key to that issue was determining whether the police possessed probable cause to make a warrantless arrest.  *See Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir.1990).  Probable cause exists where "a reasonable man would have believed probable cause existed had he known all of the

---

[3]The only possible exception is the slander claim, over which the Court ultimately declined to exercise jurisdiction.  In that claim, Sada alleged that he had been slandered by Defendants Antolin and Shapiro when they told third parties that he "had committed the crimes of disorderly conduct and domestic battery on a minor child."  (Doc. 46 at 31).

facts known by the officer." *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir.1998) (quotation and brackets omitted). Here, it was obvious that the witness statements provided to the police before the arrest easily satisfied this requirement. In the words of the Court of Appeals:

> Under Florida law, the crime of battery occurs when someone (1) actually and intentionally touches or strikes another person against the will of the other; or (2) intentionally causes bodily harm to another person. Fla. Stat. § 784.03. At the time of Sada's arrest, the officers were aware of several pieces of information that suggested that he had committed battery, including five sworn witness statements describing the contact or Sada's temperament. For example, one witnesses claimed Sada had threatened his son, then angrily went after his son and "socked" him. And another swore to police that he had responded to an incident where a father had hit his son in the face and then thrown his cell phone across the store. Further, it is undisputed that Sada's son sprinted out of the Sears store after the incident. The five statements provide overlapping accounts of what occurred in the Sears store, effectively corroborating each other. The only statements indicating that Sada had not committed a battery came from Sada himself and his son, the potentially intimidated victim of the purported battery.

*Sada*, 434 Fed.Appx. at 849-50.

### 1.    Coaching

No one can reasonably deny that those statements, standing alone, provided the police with probable cause to arrest Sada. Sada attempted to undermine those statements, or their effect, in two different ways.[4] First, he argued that the statements were false, the product of coaching by the police. But Sada never asserted that he saw such coaching occur, and he never presented a shred of evidence that it did. To the contrary, witness Delores Titen, who was deposed by Sada's counsel on June 14, 2010 – two months before the motions for summary judgment were filed – explicitly denied having been told by the police what to put in her witness statement. (Doc. 125-

---

[4]Technically, Sada did make some other arguments that could have undermined the determination as to probable cause – such as his argument that the police, despite taking five witness statements, failed to conduct a reasonable investigation – but none that merited significant discussion.

10 at 43-44).[5]  The Defendants assert (and Sada does not deny) that, after Titen's deposition, Sada cancelled the scheduled depositions of the other witnesses and made no effort to reschedule them. (Doc. 198 at 9 n. 4).  Despite abandoning the effort to uncover any evidence in support of his "coaching" allegations, Sada did not abandon the allegations themselves.

### 2.    Parental Discipline

Sada's second argument was that Florida's parental discipline privilege applied, rendering his arrest for battery on his son unlawful.  This argument was unreasonable from the outset of the case.  It is true that Florida recognizes this common law privilege.  *Raford v. State*, 828 So.2d 1012, 1015 (Fla. 2002).  However, the privilege does not permit a parent to attack his child, call it "discipline," and escape any consequences.  *See Raford* at 1020 (stating that the privilege allows a parent to "assert as an affirmative defense his or her parental right to administer 'reasonable' or 'nonexcessive' corporal punishment, i.e., a typical spanking").  As described in the statements given by the witnesses to the Individual Defendants, the altercation between Sada and his son did not at all resemble "a typical spanking".  Thus, Sada could not avail himself of the defense – unless it turned out that the witnesses were lying or utterly mistaken (and as noted above, Sada never produced any evidence of this).

Moreover, even if the privilege had applied, it would not have rendered the arrest unlawful. At best, it is an affirmative defense that would have allowed Sada to prevail at trial.  As a general rule, police are not required to consider potential affirmative defenses when making an arrest.

---

[5]The Court notes that despite the apparent importance of this issue, Sada's counsel never asked Titen whether she had been coached.  The only questions as to that issue were posed by counsel for the City, after Sada's counsel announcing he had no further questions for Titen.

*Pickens v. Hollowell*, 59 F.3d 1203, 1207 (11th Cir. 1995) (holding that police did not commit a constitutional violation by making arrest despite having some evidence that statute of limitations had expired).

Sada cites an unpublished Eleventh Circuit case, *Williams v. Sirmons*, 307 Fed. App'x. 354 (11th Cir. 2009) (unpublished), that allegedly stand for a different proposition. It does not.[6]  In *Sirmons*, a pregnant woman in medical distress was pulled over by the police while she was rushing to the emergency room; after informing them (truthfully) that she was bleeding and in premature labor, she fled.  *Id.* at 356.  The police chased after her to the hospital, located a mile away, where they caught her.  *Id.*  One officer tackled her in the parking lot outside the door to the emergency room, dislocating his shoulder in the process; the other knelt on her stomach to apply handcuffs.  *Id.*  She brought suit under Section 1983, alleging that the officers violated her Fourth Amendment rights by using excessive force in arresting her.  More particularly, she argued that because the affirmative defense of duress[7] applied to her efforts to get to the hospital, there was no probable cause to arrest her for fleeing from the police, and therefore *any* force used in effecting her arrest was unjustified.  *Id.*

---

[6]Sada did not cite to *Sirmons*, or any of the cases upon which it relies, in his response to the motions for summary judgment.

[7]Under Florida law, necessity or duress is an affirmative defense to the crime of fleeing or eluding a police officer.  *See Rowley v. State*, 939 So.2d 298, 300 (Fla.Ct.App.2006).  The elements of the defense are (1) the defendant reasonably believed that a danger or emergency existed that she did not intentionally cause; (2) the danger or emergency threatened significant harm to her or a third person; (3) the threatened harm was real, imminent, and impending; (4) the defendant had no reasonable means to avoid the danger or emergency except by committing the crime; (5) the crime was committed out of duress to avoid the danger or emergency; and (6) the harm the defendant avoided outweighs the harm caused by committing the crime.  *Driggers v. State*, 917 So.2d 329, 331 (Fla.Ct.App.2005).

The police officers moved for summary judgment, arguing that they were entitled to qualified immunity because they had probable cause to make an arrest, because they had witnessed her committing the crime of eluding the police. *Id.* at 356. The trial court disagreed, finding that although the elements of the crime appeared to have been established, the evidence viewed in the light most favorable to the nonmovant established that the arrest was not based on probable cause because the affirmative defense of duress applied. *Id.* at 356-57. The Court of Appeals upheld the ruling, stating that "in determining whether probable cause to arrest exists, an officer must consider all facts and circumstances within that officer's knowledge, including facts and circumstances *conclusively establishing* an affirmative defense." *Id*. at 358. (emphasis added). Viewing the evidence in the light most favorable to the nonmovant, the Court of Appeals found that the evidence established that the officers knew (or should have known) that the affirmative defense of duress applied, thereby eliminating probable cause to make an arrest.

This is not a new or different rule, as the police in *Sirmons* were not required to consider a potential affirmative defense. It has always been the case that "[p]robable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir.2002). In those rare circumstances where a law enforcement official *knows* that an affirmative defense conclusively bars a conviction, he or she cannot be said to possess a reasonable belief that the person has committed a crime.

In the instant case, even assuming *arguendo* that the privilege applied, the officers did not have any information that "conclusively established" its applicability. Unlike the officers in *Sirmons*, they did not witness the encounter between Sada and his son, so they did not have

personal knowledge of the actual facts.  Also unlike the officers in *Sirmons*, the officers here had

numerous witness statements suggesting the affirmative defense would not apply (because, as

discussed *supra*, the situation they described did not at all resemble a traditional spanking).  At

most, what the officers here were presented with was a factual dispute as to whether the parental

discipline privilege would apply.  Even though it is conceivable that a jury could have agreed with

Sada that the affirmative defense applied, this would not have rendered the arrest unlawful,

because the officers would not have *known* the privilege applied at the time they made the arrest.

Thus, Sada's second argument never had a chance of success

> **B.     Frivolousness**

The Defendants are not arguing that his case was frivolous from the outset.  However, they

argue that once it was clear that there was no evidence that the witnesses had been coached, it

should have been clear that Sada's claims had no possibility of success, and that Sada and his

counsel had an obligation to drop them.  The Court agrees.  Sada's entire case was based on a lack

probable cause, and Sada's argument that the police lacked probable cause to arrest him rested on

two foundations: the parental-discipline argument and the witness-coaching argument.  The

parental discipline argument was objectively frivolous from the beginning, as it never had a chance

of success.  The witness-coaching argument may not have been frivolous initially, but certainly

became so once it was clear that no evidence supported it, and certainly by the time opposing

counsel identified the problem for Sada's counsel.  Accordingly, the Court finds that as of June

17th, 2010 – the date of the Rule 11 letter sent to Sada's counsel – the entire case was objectively

frivolous.

### C.    Preclusive Effect

Sada argues that the United States Court of Appeals has already been presented with the

Defendants' sanctions arguments and rejected them, and therefore they are barred by the doctrine

of *res judicata* or collateral estoppel.  (Doc. 244 at 6).  This argument also lacks merit.  After Sada

appealed the entry of summary judgment against him, the Defendants sought sanctions under Rule

38 of the Federal Rules of Appellate Procedure on the grounds that the appeal was frivolous.  Rule

38 is discretionary, permitting but not requiring federal courts of appeals to award damages to an

appellee upon determining that the appeal is frivolous.  *Burlington Northern R. Co. v. Woods*, 480

U.S. 1, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987).

In its order affirming the grant of summary judgment, the appellate court denied the Rule

38 motion by way of the following footnote: "Nevertheless, the Defendants-Appellees' motion for

recovery of damages, double costs and attorneys' fees for frivolous appeal is DENIED."  (Doc.

254 at 14 n.3).  No further explanation for the denial was provided.  Given the discretionary nature

of Rule 38, and the absence of discussion, it is clear that the Eleventh Circuit did not consider the

issue of frivolousness on the merits.  Accordingly, its denial of the Rule 38 motion cannot have a

preclusive effect on these arguments.  *See also Williams v. Florida Health Sciences Ctr., Inc.*,

2007 WL 924500 (M.D.Fla. 2007) (holding that appellate court's denial of Rule 38 motion does

not prevent the district court from subsequently imposing Rule 11 sanctions as to same issue),

*aff'd*, 293 Fed.Appx. 757 (11th Cir. 2008).

### D.    42 U.S.C. § 1988

As the Section 1983 claims were the primary focus of this case, the Court first considers an

award under Section 1988.  The Court entered summary judgment in favor of the Defendants as to

both of Sada's Section 1983 claims.  Accordingly, the City is a "prevailing party" for purposes of Section 1988.[8]

Thus the Court must determine whether the Section 1983 claims were frivolous for purposes of Section 1988.  *See Sullivan*, 773 F.2d at 1189.  As detailed above, Sada never established a *prima facie* case as to the Section 1983 claims.[9]  His parental-discipline-privilege argument failed as a matter of law, and he never uncovered or presented any evidence in support of his argument that the witnesses against him had been coached.  *See also Christiansburg Garment Co.*, 434 U.S. at 422, 98 S.Ct. at 701 (holding that "a plaintiff should not be assessed his opponent's attorney's fees [under 42 U.S.C. § 1988] unless a court finds that his claim was frivolous, unreasonable, or groundless, *or that the plaintiff continued to litigate after it clearly became so*.") (emphasis added).  The Defendants contend (and Sada does not dispute) that the City offered only a nuisance-value settlement, despite Sada's six- and seven-figure settlement demands. (Doc. 209 at 9-10).  Finally, the instant case was resolved in the Defendants' favor prior to a trial on the merits.  All three of these factors weigh in favor of an award under Section 1988. Accordingly, the Court finds that the City is entitled to recover as part of its costs, from Sada, its reasonable attorneys' fees incurred defending the Section 1983 claim.

### E.  Florida offer of settlement

Pursuant to Fla. Stat. § 768.79, the City also seeks to recover the attorney fees it incurred defending Sada's state tort claims.  The City presented an offer of settlement (Doc. 206 at 2-3),

---

[8]The Individual Defendants have not sought recovery under 42 U.S.C. § 1988.

[9]Sada's Section 1983 claim against the City was based on its allegedly improper training of its police officers, resulting in a violation of his constitutional rights.  Thus, as to both Section 1983 claims, Sada was required to make a *prima facie* showing that he was arrested without probable cause.

which purported to resolve "any and all of [Sada's] state tort claims to which this Rule/Statute applies between the parties to this proposal for settlement." (Doc. 206 at 2). In exchange for a payment of $2,501, the City sought to have Sada dismiss all of his state tort claims with prejudice and execute a release. (Doc. 206 at 3).

The release was attached to the offer. (Doc. 206 at 5-7). It required Sada to release "any and all state tort claims against the City of Altamonte Springs, the Florida Municipal Insurance Trust (FMIT), and their respective agents, *employees*, servants, and insurers". (Doc. 206 at 5) (emphasis added). Given that the other defendants were Altamonte Springs police officers and would presumably be employees of the City, Sada complains that the two documents contained a significant ambiguity. The Court agrees. Upon being presented with that offer, it would not be clear whether it was intended to release just the City (as the offer of settlement seemed to state) or the City and all of the other Defendants (as the word "employees" implied). As such, the offer failed to satisfy the particularity requirement of Fla. Stat. § 768.79, and Sada cannot be faulted for failing to accept it.

### F.     Rule 11 and Section 1927

The City seeks sanctions under Rule 11 and Section 1927 against both Sada and his counsel. As discussed above, it was obvious from the outset that the witness statements given to the police provided them with probable cause to arrest Sada. And it was true from the outset of this case that the existence of probable cause was fatal to all of Sada's claims (with the possible exception of the slander claim, which it does not appear the parties actually litigated). Sada only advanced two arguments that could possibly have overcome this hurdle. Both of these arguments

-17-

had fatal shortcomings:  The parental discipline privilege argument was not warranted by existing law, and no evidentiary support was ever uncovered for the coaching argument.[10]

The Defendants appear to concede that the possibility that evidence could be discovered in support of the coaching argument means that it was not frivolous when this case was filed.  But by the time it was clear no such evidence could be found, that argument and therefore Sada's entire case were objectively frivolous, warranting sanctions under Rule 11 from that point forward.  Continuing to pursue this case under these circumstances was also unreasonable and vexatious, and had the effect of multiplying the proceedings, warranting sanctions under Section 1927.[11]

"When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and

---

[10]Sada's counsel now contends that the parental discipline privilege argument was warranted by "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," as permitted by Fed.R.Civ.P. 11(b)(2).  However, Sada made no such argument at the time summary judgment was under consideration – presumably because it would have resulted in a determination that the Defendants were entitled to qualified immunity because the law on this point was not well settled.  In addition, in the responses to the instant motions, Sada and his counsel never actually make any arguments for extending, modifying, or reversing existing law or for establishing new law.

Sada and his counsel raise two other arguments against the imposition of Rule 11 sanctions, but neither merits much discussion.  They argue that the Rule 11 motions were untimely, because the Defendants did not warn them early enough that they were violating the rule.  The Defendants did send Sada and his counsel a letter at the close of discovery, seeking to have them withdraw their claims as frivolous.  But the Defendants were under no obligation to provide an earlier warning.  Given that Sada and his counsel continue to advance those same arguments here, their protests about the need for notice ring hollow.  Sada and his counsel also argue that Rule 11 only applies to claims at the moment they were brought, and because the City is not asserting that the case, as brought was sanctionable, Rule 11 does not apply.  But the plain text of Rule 11 shows that it can apply to "a pleading, written motion, or other paper" – including "other papers" such as responses to motions for summary judgment containing frivolous arguments.

[11]The same conduct may be sanctionable under both Rule 11 and Section 1927.  *See*, *e.g.*, *Avirgan v. Hull*, 125 F.R.D. 189 (S.D.Fla. 1989).

his attorney have a duty to discontinue their quest." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (citing *Collins v. Waldean*, 834 F.2d 961, 965 (11th Cir. 1987).

By their terms, sanctions under Rule 11 and Section 1927 are only available against attorneys, with certain exceptions not applicable here. Therefore, the Court finds that all of the Defendants are entitled to recover from Sada's counsel, pursuant to both Rule 11 and Section 1927, all of the reasonable costs, expenses, and attorneys' fees they incurred in defending this action beyond the close of discovery.[12]

## IV.   Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Sanctions (Doc. 198), the Motion to Tax Fees and Costs (Doc. 209), the renewed Motions for Fees and Costs (Doc. 232-236) and the Supplemental Motion for sanctions (Doc. 237) are **GRANTED IN PART AND DENIED IN PART** as set forth above. Counsel for Sada are liable to the Defendants under Rule 11 and Section 1927 for the reasonable costs, expenses, and attorneys' fees they incurred in defending this action beyond June 17, 2010. Under Section 1988, Sada is jointly and severally liable with his counsel to the City for the reasonable attorneys' fees (including expert fees) it incurred in defending the Section 1983 claim against it beyond that same date.[13]

The Defendants have not presented the Court with the itemized billing records necessary for the Court to determine the precise amount of the awards. The Defendants shall file those

---

[12]Any other arguments raised by Sada and his counsel and not explicitly addressed in this order have been considered and rejected.

[13]The Court has not yet determined whether expenses incurred on appeal will be included in the award. The parties should address this issue in their filings.

records on or before February 29, 2012.  The Defendants shall segregate, to the extent possible, all

expenses incurred in defending the Section 1983 claims beyond June 17, 2010 from the expenses

incurred in defending the other claims beyond that date.  The Defendants shall also segregate, to

the extent possible, any expenses incurred in defending the slander claim.  The Plaintiff shall file

any objections to the amounts sought on or before March 12, 2012.  At that time, the Plaintiff may

request an evidentiary hearing on the issue of the amount of fees.

     **DONE** and **ORDERED** in Chambers, Orlando, Florida on February 15, 2012.

                                      **GREGORY A. PRESNELL**
                               **UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party